IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLIFFORD McCLOSKEY and FRANCES McCLOSKEY v. VALLEY PAIN CENTER, LLC et al. | : : : : : : | CIVIL ACTION NO. 07-5116 |
| CLIFFORD McCLOSKEY and FRANCES McCLOSKEY VALLEY PAIN CENTER, LLC et al. | : : : : : : | CIVIL ACTION NO. 07-5287 |

MEMORANDUM

McLaughlin, J.                                            April 19, 2010

In this medical malpractice action, plaintiff Clifford McCloskey alleges that he suffered a seriously disabling infection from a negligently performed discogram procedure on his lower back.[1] His wife, plaintiff Frances McCloskey alleges a loss of consortium. The plaintiffs allege that Mr. McCloskey's infection was caused by bacteria that entered his spine when his lower back was injected as part of the discogram. In their complaint, the plaintiffs suggest that the infection occurred when the doctor performing the discogram, defendant Dr. Jeffrey

---

[1] The plaintiffs filed two separate actions arising out of the incident at issue, Case No. 07-5116 and Case No. 07-5287. Both actions have been consolidated in this Court for all purposes.

Selk, D.O., who was not wearing a surgical mask, coughed during the procedure.

Three groups of defendants remain in the case: Dr. Selk and his corporation, Clinical Pain Management Association; Valley Pain Center, LLC ("Valley Pain"), the medical facility where Dr. Selk performed the procedure; and Crozer Chester Medical Center and Crozer Keystone Health System (collectively "Crozer Chester"), the facilities which provided treatment when Mr. McCloskey was hospitalized with severe back pain several days after the discogram and which allegedly failed to diagnose his infection.

Both Valley Pain and Crozer Chester have filed motions for summary judgment. The Court held oral argument on the motions on April 15, 2010. At the conclusion of the argument, the Court stated that the Court would grant both motions for summary judgment. The Court incorporates by reference its statements on the record at the oral argument into this memorandum.

Valley Pain and Crozer Chester's arguments for summary judgment both turn on whether the plaintiffs have produced expert reports that sufficiently establish the required elements of negligence on the part of the moving defendants and their employees. Although the issues raised in the motions are similar, the Court will address them separately.

I.  Valley Pain's Motion for Summary Judgment

At oral argument, the plaintiffs clarified the scope of their claims against Valley Pain, mooting several of the issues raised in Valley Pain's summary judgment motion. The plaintiffs agreed that their experts had not opined that Valley Pain had violated a standard of care that the corporation owed to Mr. McCloskey and that they were therefore not seeking, in that sense, to hold Valley Pain directly liable for Mr. McCloskey's injury.[2]

The plaintiffs also agreed that they could not hold Valley Pain liable for the alleged negligence of Dr. Selk. The plaintiffs conceded that Dr. Selk was not an employee of Valley Pain, but was instead an independent contractor. In their opposition to the summary judgment motion, the plaintiffs argued that they could nonetheless hold Valley Pain responsible for Dr. Selk's alleged negligence under a theory of ostensible agency.[3]

---

[2]  Under Pennsylvania law, which the parties agree governs the claims here, a corporation providing medical services can be directly liable for failing to train or to supervise its employees, but such a claim requires expert testimony as to the corporate standard of care, breach of that standard, and causation. See Yee v. Roberts, 878 A.2d 906, 914 (Pa. Super. Ct. 2005); Gondek v. Bio-Medical Applications of Pa., Inc., 919 A.2d 283, 288 (Pa. Super. Ct. 2007). The plaintiffs agreed that they had not produced expert testimony on such a theory with respect to Valley Pain.

[3]  Under Pennsylvania law, although employers are ordinarily not liable to a plaintiff for the acts of independent contractors, they may become liable for such acts under an ostensible agency theory if the services provided by an

3

After filing their response to Valley Pain's motion, however, the plaintiffs reached a settlement with Dr. Selk. On the basis of that settlement, Valley Pain filed a supplement to their summary judgment motion, arguing that by settling their claims with Valley Pain's alleged ostensible agent, the plaintiffs had necessarily extinguished any derivative claims against Valley Pain. At oral argument, the plaintiffs agreed that, under Pennsylvania law, the settlement with Dr. Selk had extinguished any vicarious liability claims against Dr. Selk's principal, Valley Pain, based on Selk's negligence.[4]

With these concessions, the plaintiffs' counsel affirmed at oral argument that the only theory of liability that the plaintiffs were pursuing against Valley Pain was to seek to hold it responsible for the allegedly negligent acts of its employees, the nurses and radiology technicians involved in Mr. McCloskey's discogram procedure. Under Pennsylvania law, an employer is vicariously liable for negligent acts of its

---

independent contractor are accepted by the plaintiff in the reasonable belief that they are being rendered by the employer or by its servants. Capan v. Divine Providence Hosp., 430 A.2d 647, 367 (Pa. Super. Ct. 1980) (citing Restatement (Second) of Torts § 429).

[4] See Mamalis v. Atlas Van Lines, Inc., 560 A2d 1380, 1383 (Pa. 1989) ("We hold that absent any showing of an affirmative act, or failure to act when required to do so, by the principal, termination of the claim against the agent extinguishes the derivative claim against the principal."); see also Maloney v. Valley Med. Facilities, Inc., 984 A.2d 478 (Pa. 2009).

4

employees that cause injury to third parties, as long as such acts were committed during the course of and within the scope of the employment.  Sutherland v. Monongahela Valley Hosp., 856 A.2d 55, 625 (Pa. Super. 2004) (citing R.A. v. First Church of Christ, 748 A.2d 692, 699 (Pa. Super. Ct. 2000)).  Here, Valley Pain has not disputed that the nurses and radiology technicians involved in Mr. McCloskey's treatment were acting in the scope of their employment.

To establish negligence on the part of a Valley Pain employee, the plaintiffs must establish that the employee at issue owed a duty to the plaintiff, that the employee breached that duty, and that the breach of duty was the direct and proximate cause of the plaintiff's injury.  Quinby v. Plumsteadville Family Practice, Inc., 907 A.2d 1061, 1070 (Pa. 2006); Griffin v. Univ. of Pittsburgh Med. Ctr., 950 A.2d 996, 999-1000 (Pa. Super. Ct. 2008).

Because the plaintiffs' claims involve medical negligence, expert testimony is required to establish the elements of duty, breach and causation, unless the issue "is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons."  Hightower-Warren v. Silk, 698 A.2d 52, 54 n.1 (Pa. 1997); see also Quinby, 907 A.2d at 1070. Pennsylvania requires expert testimony not just for medical

malpractice claims against physicians, but also to claims of medical negligence against nurses and other medical professionals. See Yacoub v. Lehigh Valley Med. Assocs., P.C., 805 A.2d 579, 591 (Pa. Super. Ct. 2002) ("In order to meet her burden of proof, Appellant was required to provide expert testimony to establish, to a reasonably degree of medical certainty, that the acts of the internists and nurses deviated from acceptable medical standards and that such deviation was a proximate cause of the harm suffered.").

Valley Pain argues that the plaintiffs have not met their burden of establishing a prima facie case of negligence on the part of its employees because the plaintiffs' expert reports do not give an opinion that such negligence occurred or that it caused harm to Mr. McCloskey. The plaintiffs have identified and produced reports for two experts, Gregory J Przybylski, M.D., a neurosurgeon, and Richard L. Rauck, M.D., an anesthesiologist and pain management specialist. Both of the reports focus primarily on the actions of Dr. Selk.[5]

---

[5] In addition to arguing that neither Dr. Przybylski nor Dr. Rauck's reports sufficiently opine that any Valley Pain nurse or other employee was negligent, the plaintiffs also argue that neither Przybylski nor Rauck is qualified to give such an opinion. Whether a medical expert is qualified to testify to matters outside his or her specialty turns on the expert's specific qualifications and experience. Compare Rettger v. UPMC Shadyside, 2010 WL 937277 at *9 (Pa. Super. Ct. March 17, 2010) (neurosurgeon who interacted daily with nurses was qualified to testify on nursing standard of care) with Yacoub, 805 A.2d at 592 (neurosurgeon who rarely practiced in hospital setting could not

Dr. Przybylski's report states that it is his opinion that Mr. McCloskey suffered "multilevel streptococcus viridians and oralis discitis and osteomyelitis" as a result of the discogram performed by Selk. He states that the sterile field was contaminated throughout the discogram procedure and prior to Mr. McCloskey being injected and that this contamination occurred with oral bacteria rather than skin bacteria. He concludes that "the performance of the discography procedure at five levels by Dr. Selk with subsequent multilevel discitis and osteomyelitis at all 5 levels tested falls below the standard of care."

Dr. Rauck says in his report that the standard of care for performing a discogram is to inject only the spinal disc most likely responsible for causing a patient's back pain and a second disc as a control, and that, in performing a discogram on Mr. McCloskey at all five levels, Dr. Selk fell below the standard of care. Dr. Rauck also addresses the undisputed fact that Mr. McCloskey was not given intravenous antibiotics before the discogram. He concludes that "Dr. Jeffrey Selk fell below the standard of care in performing a 5 level discogram on Clifford McCloskey without providing appropriate and necessary intravenous antibiotic coverage" and that this lack of antibiotic coverage was the "direct and proximate cause for the subsequent Viridians

---

testify as to nursing standard of care). The Court declines to reach the issue of the plaintiffs' expert's qualifications on this record.

streptococcus infection resulting in osteomyelitis and dicitis throughout the lumbar spine."

Neither Dr. Przybylski nor Dr. Rauck specifically addresses the negligence of Valley Pain's employees in their reports. Both experts state that, in preparing their reports, they reviewed the depositions of several nurses, at least one of whom, Eileen Mulderig, was employed by Valley Pain and involved in the discogram procedure.

The only specific reference to a Valley Pain employee in Dr. Przybylski's report is his use of Nurse Mulderig's deposition to confirm several facts about the discogram procedure. He states that Nurse Mulderig's deposition confirmed both the use of a betadine prep in the discogram procedure, and that five needles were used "with a left sided approach." He also says that Nurse Mulderig "stated that she did not wear a mask during the procedure in 2005, but wears one now."

Dr. Rauck's report does not mention any Valley Pain employee by name. The only portion of the report that alludes to Valley Pain employees is a section describing the use of "staff" to prep and drape Mr. McCloskey for the procedure:

> Dr. Selk attempts to use a sterile technique. It is not common to have staff perform the prep and surgical drape of a procedure such as discography. Also, it is unclear if a surgical (operative) prep and drape was utilized by Dr. Selk. He did not wear any protective mask during the procedure. this

8

>     may have further lead to the probability of
>     developing an infection postoperatively.

Report of Richard L. Rauck, M.D. at 3.

Despite the lack of references to Valley Pain staff in either expert report, the plaintiffs contend that the reports, viewed as a whole and in context, establish negligence on the part of Nurse Mulderig and other nursing employees who "permitted and/or contributed to the contamination of the sterile field and the introduction of oral bacteria into the field" and who failed to "administer pre-operative antibiotics to decrease the risk of infection." Pl. Mem, Docket No. 122, at 5. The plaintiffs state that Nurse Mulderig (as well as Dr. Selk) admitted to not wearing a surgical mask during the discogram procedure. They also state that their expert Dr. Rauck has opined that, had the plaintiff received intravenous antibiotics, he, more likely than not, would not have developed an infection and subsequent injury. Id.

These spare references to Valley Pain employees in the plaintiffs' expert reports, even viewed together and in the light most favorable to the plaintiffs, are insufficient to establish a prima facie case of negligence against any employee of Valley Pain. Nothing in the either of the plaintiffs' expert reports gives an opinion on the standard of care required of a nurse or radiology technician during a discogram or states that any of the employees involved breached that standard. The only individual

identified in either report as breaching the applicable standard of care is Dr. Selk.

Without expert testimony, the plaintiffs cannot establish negligence on the part of a Valley Pain employee. None of the issues raised by the plaintiffs' claims is "so simple or . . . obvious as to be within the range of experience and comprehension of . . . non-professional persons" and so be exempt from the requirement of expert testimony. Hightower-Warren, 698 A.2d at 54 n.1. Even the fact that Nurse Mulderig did not wear a mask during the discogram cannot support a finding that she was negligent (and so provide a basis for Valley Pain's negligence) without expert testimony showing it was the standard of care for a nurse at the time to wear a mask during that procedure.

Because the plaintiffs have not produced the expert testimony necessary to state a claim of negligence against the nurses involved in Mr. McCloskey's discogram (or against any other employee of Valley Pain), they cannot make out a claim against Valley Pain based on the acts of its employees. Because this is the only theory of liability upon which the plaintiffs are seeking to impose liability on Valley Pain, the Court will grant summary judgment.

II. Crozer Chester's Motion for Summary Judgment

Like Valley Pain, the Crozer Chester defendants have moved for summary judgment on the ground that the plaintiffs have not produced sufficient expert testimony to establish the elements of negligence with respect to them.

Mr. McCloskey's discogram was performed on December 5, 2005. On December 7, 2005, Mr. McCloskey was admitted to Crozer Chester hospital with severe back pain, and he was discharged on December 12, 2005. No biopsy of Mr. McCloskey's lower back or spine was performed during the Crozer Chester hospitalization, nor was Mr. McCloskey's infection diagnosed. Mr. McCloskey was subsequently admitted to Holy Redeemer Hospital on December 24, 2005, where he remained until January 4, 2006. While at Holy Redeemer, Mr. McCloskey underwent a biopsy and was diagnosed with osteomyelitis and discitis.

In their complaint, the plaintiffs allege that Crozer Chester was negligent by failing to recognize the signs and symptoms of infection, by not properly referring Mr. McCloskey to specialists to properly evaluate and diagnose his infection, and by failing to provide appropriate antibiotic, surgical, or other treatment to prevent the spread of infection. Compl. in Case. No. 07-5287 at ¶ 86. In support of these allegations, the plaintiffs rely on the report of Dr. Przybylski.

The portion of Dr. Przybylski's report that gives his opinion with respect to Crozer Chester states:

> Mr. McCloskey was diagnosed at Holy Redeemer Hospital with discitis and osteomyelitis nearly 3 weeks after the procedure and was subsequently treated with prolonged bacteriospecific antibiotics. The diagnosis should have been made during the Crozer-Chester hospitalization between 12/7/05 and 12/15/05. Although the MRI obtained on 12/7 and 12/12 were not conclusive of discitis and blood culture was negative, the elevation of the ESR and CRP with increasing value during the hospitalization within this clinical context should have prompted disc space biopsy. Subsequent biopsy at Holy Redeemer did show bacteria in the disc space. Failing to complete the diagnostic work-up at Crozer-Chester also falls below the standard of care.

Przybylski Report at 4.

As discussed earlier, under Pennsylvania law, to make out a prima facie case of medical negligence, a plaintiff must establish duty, breach and causation, and in all but the most self-evident cases, must do so through expert testimony. See Quinby, 907 A.2d at 1070. Crozer Chester contends that the plaintiffs have failed to meet that burden here because Dr. Przybylski's report does not give an opinion on causation. The Court agrees.

In his report, Dr. Przybylski states that it was below the standard of care for Crozer Chester to not complete Mr. McCloskey's "diagnostic workup" and perform a biopsy. Dr. Przybylski does not give an opinion, however, as to whether a

12

biopsy performed at Crozer Chester would have revealed Mr. McCloskey's discitis and osteomyelitis.  Even if a biopsy would have detected Mr. McCloskey's infection, Dr. Przybylski does not say that the delay in making the diagnosis caused Mr. McCloskey additional harm.  Dr. Przybylski does not give an opinion as to whether the approximately two-week delay between Mr. McCloskey's December 12, 2005, discharge from Crozer Chester and his eventual December 27, 2005, diagnosis with discitis and osteomyelitis at Holy Redeemer, increased his risk of harm or caused him to suffer a worse outcome.

The issue of whether an earlier diagnosis would have resulted in more favorable outcome for Mr. McCloskey is not something within the knowledge of a lay person, and the plaintiffs are therefore required to produce expert testimony to establish that the alleged delay in diagnosis caused Mr. McCloskey harm.  By failing to produce expert testimony on that issue, the plaintiffs have failed to make out a prima facie case against the Crozer Chester defendants, and the Court will therefore grant their motion for summary judgment.

An appropriate Order will be entered separately.